UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARVIN GASTON,                    :          NO. 1:03-CV-00423
                                  :
          Plaintiff,              :
                                  :
     v.                           :          **OPINION AND ORDER**
                                  :
ABX AIR, INC., et al.,            :
                                  :
          Defendants.             :


          This matter is before the Court on Defendants' Amended

Motion for Summary Judgment (doc. 53), Plaintiff's Memorandum in

Opposition (doc. 57), and Defendants' Reply (doc. 61).

**I.  BACKGROUND**

          Defendant ABX Air, Inc., is an all-cargo express airline

that ships time-sensitive packages around the country (doc. 53).

ABX employed Plaintiff Martin Gaston at its Wilmington, Ohio,

facility,  for roughly three years, first as a part-time package

sorter but primarily as a storekeeper (doc. 1).  Plaintiff, who is

African American, alleges in his Complaint that from the time ABX

hired him he sensed racial tensions (Id.).  According to Plaintiff,

Defendants singled him out for menial tasks, falsely accused him of

making mistakes, and subjected him to hostility, which culminated

in his termination on March 28, 2002 (Id.).  Plaintiff brings

claims pursuant to Title VII of the Civil Rights Act of 1964, as

amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, et.

seq., 42 U.S.C. § 1981, Ohio Rev. Code § 4112, and Ohio public

policy (Id.).   In response, Defendants argue they terminated Plaintiff not due to his race, but for a host of performance-related issues (doc. 53).   Defendants argue Gaston had three different supervisors during his tenure at ABX, and all three counseled and trained Plaintiff for performance problems during his employment (Id.).   According to Defendants, Gaston's performance deteriorated, culminating in a series of errors relating to the shipping of hazardous materials (Id.).   In fact, argue Defendants, in the last months of his employment, Plaintiff's errors resulted in hazardous material shipping violations that Plaintiff does not dispute (doc. 61).   Plaintiff responds that the errors in question were caught such that no harm resulted, and that two Caucasian employees who made similar errors that resulted in fines to the company were not terminated (doc. 57).

Defendants filed their Amended Motion for Summary Judgment on August 22, 2006, Plaintiff responded, and Defendants replied, such that this matter is ripe for the Court's consideration.   For the reasons indicated herein, the Court DENIES in part Defendants' Motion as to Plaintiff's federal and state law discrimination claims, but GRANTS in part such motion as to Plaintiff's Ohio public policy claims, and as to Plaintiff's claims against individual Defendant Donna Scott.[1]

---

[1] The Court will therefore refer to Defendant in the singular through the balance of this Order, as only the liability of Defendant ABX Air, Inc. is now in question.

## II.  FACTS

The basic facts of the case are essentially uncontested. However, the parties offer different interpretations of the facts, as Plaintiff alleges the facts support his claims for discrimination, and as Defendant argues the facts show it justifiably terminated Plaintiff's employment for poor performance. The following facts are drawn from the pleadings, the motions, depositions, and other filings in this matter.

Plaintiff started working for Defendant on February 1, 1999, as a package sorter (doc. 53).  Plaintiff came to the position with background and experience with jets and planes, including service in the U.S. Air Force, and some sixteen months as a parts manager (doc. 57).  Ultimately Plaintiff would spend the most of his tenure with Defendant managing parts, but for the first four months of his employment at ABX, he sorted packages under the supervision of Tim Stirr (Id.).  This initial position required Plaintiff to quickly sort through packages coming at him on conveyor belts that were unloading planes, and to put the packages into correct chutes respective to their destinations.

Gaston alleges that Stirr treated the African-American employees differently by not sending them help when they were overwhelmed with the volume of packages (doc. 57).  According to Plaintiff, Stirr let the African-American employees struggle, while helping the Caucasian employees succeed (Id.).  In Defendant's

view, Plaintiff had trouble keeping up with the speed at which
packages came down the conveyor belt for sorting (doc. 53).
Plaintiff suggests that the speed at which he was forced to work
was unreasonable and caused him on one occasion to drop a mail bag
down the wrong chute (doc. 57). When Plaintiff approached Stirr to
rectify the problem, Stirr issued a written reprimand (Id.).
Plaintiff alleges that "in his experience" Stirr did not reprimand
Caucasion employees in the same manner (Id.). Defendant indicates
that Plaintiff's allegation is unsubstantiated, and that Plaintiff
admitted in his deposition that he did not know whether Stirr
reprimanded Caucasian employees for similar infractions (doc. 61).

On or around May 31, 1999, Plaintiff transferred to a
second-shift position as storekeeper, became a full-time employee
with benefits, and received a $0.55 per hour raise (doc. 53). In
his new position, Plaintiff reported to Donna Scott, and worked at
a parts window, issuing airplane parts to mechanics, tracking the
parts inventory and shipping and receiving parts (Id.).

Plaintiff alleges that Scott wrote him up for errors that
were caused by a defective scanner that sometimes did not pick up
part numbers or note their issuance (doc. 57). Frustrated,
Plaintiff transferred to third shift, under Dan Bogard, where
Plaintiff alleges he had further problems due in part to Caucasian
employees who spoke quickly over the radio using non-standard
language he could not understand (Id.). Plaintiff alleges he did

4

not succeed in his attempt to get Bogard to address this issue (Id.). Gaston alleges that Bogard constantly nitpicked him and imposed requirements on him that no Caucasian employee was forced to accept (Id.). Specifically, Gaston indicates Bogard made him initial certain lists, called "pick lists," but did not make any other storekeepers, all who were white, do the same (Id.). Defendant argues that it is inaccurate for Plaintiff to say that Bogard imposed different requirements, as deposition testimony shows that all shifts were required to follow same procedures, and Bogard was simply not sure whether he had told everyone to comply (doc. 61).

In November 2000, Plaintiff met with Jennifer Miesse, the third-shift employee relations supervisor, to discuss Bogard's warnings and Plaintiff's feeling that Bogard treated him differently than other employees on third shift (doc. 57). After investigating, Miesse concluded that Bogard should have informally coached Plaintiff instead of reprimanding him, that cultural and dialectical differences could not be blamed on Plaintiff alone, and that Bogard did not hold five other employees equally accountable who had similar performance concerns (Id.). Throughout most of his time working under Bogard, Plaintiff was the only African American subordinate of Bogard (Id.). Defendant argues that Plaintiff fails to identify the race or identities of the five other employees who allegedly had similar performance issues but received no written

5

warnings (doc. 61).  In any event, Defendant indicates it removed Bogard's written warning and changed Bogard's performance evaluation of Plaintiff subsequent to Miesse's investigation (Id.).

By January 2001, Plaintiff transferred yet again, this time back to work under Donna Scott, the second-shift supervisor. According to Defendant, Scott personally provided Plaintiff with more training, and also arranged for one-on-one training with the Receiving and Training Supervisor in Aircraft Stores, Betty Yates (doc. 53).  Despite this training, Defendant indicates Plaintiff's performance declined (Id.).

Plaintiff indicates that in November 2001 Scott rated him "good" overall, that he had improved in job knowledge, error rate, and cooperation, but that he needed improvement in his performance (doc. 57).  As Scott testified in her deposition that she put a lot of thought into Plaintiff's evaluations, Plaintiff felt he was singled out from among other employees (Id.).

Scott warned Plaintiff on December 18, 2001, about a number of errors in the shipping and receiving of parts, and informed Plaintiff he needed immediate improvement (doc. 53). Immediately thereafter, Plaintiff states Scott called him into her office every night to talk about alleged performance issues, berated him for using a restroom when the closest to his work area was occupied, and removed stools despite his request to continue to use one when processing paperwork (doc. 57).  Plaintiff indicates

6

Scott left one stool to be used by a Caucasian co-worker (Id.).

The record is unclear as to exactly when, but at some point prior to Plaintiff's termination, two ABX employees, Steve Fender and Gary Johnson made errors in the shipping of hazardous materials that resulted in fines being levied against ABX (doc. 61). Neither of these two Caucasian employees were fired for their errors (doc. 57). Defendant indicates that as a result of the Fender and Johnson errors, new procedures were put in place to avoid similar errors (doc. 61).

In January 2002, Scott promoted a less senior storekeeper to lead storekeeper, bypassing Gaston (doc. 57). Gaston met with Deborah Loveless, Senior Director of Human Resources for ABX, to express his frustration. Loveless consulted with Scott, reviewed Gaston's personnel file, and concluded that Gaston's documented performance problems provided an appropriate basis to not promote Gaston (doc. 58).

Defendant indicates Scott subsequently warned Plaintiff on both January 9, 2002, and February 27, 2002, concerning more problems, including new problems with the shipment of hazardous materials (doc. 53). In March 2002, Scott warned Plaintiff about alleged inappropriate behavior toward a female employee, which Plaintiff indicates was only a joke (doc. 57). Plaintiff states the female employee actually later offered to help him with any action he took against the company (Id.).

7

In March 2002, Defendant further indicates that Gaston shipped hazardous materials incorrectly two to three times (doc. 53). In the final incident, Defendant argues that Plaintiff failed to use the required packaging of an aircraft fuel cell before shipping (Id.). Defendant characterizes the mistake, if not caught, as potentially catastrophic (doc. 61). After this incident, Defendant terminated Plaintiff's employment (Id.). Plaintiff timely filed a charge of race discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission, and The EEOC issued a notice of right to sue (doc. 1). On June 12, 2003, Plaintiff filed his Complaint (Id.).

## III. ANALYSIS

### A. Applicable Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must

determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the

motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts

10

upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

## B. Discussion

Plaintiff's discrimination claims are brought under Title VII of the Civil Rights Act of 1964, its Ohio state law analog, Ohio Revised Code § 4112, and 42 U.S.C. § 1981 which protects

11

contract rights of minorities. The same evidentiary framework applies to discrimination claims brought under Title VII, Ohio state law, and 42 U.S.C. § 1981. <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582 (6th Cir. 1992), <u>Allen v. Ethicon, Inc.</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996).

In order to establish a claim of race discrimination in employment, Plaintiff may either introduce direct evidence of discrimination or prove circumstantial evidence that would support an inference of discrimination. <u>Kline v. Tenn. Valley Auth.</u>, 128 F.3d 337, 348 (6th Cir. 1997), <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1081 (6th Cir. 1994); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802,(1973); <u>Ackerman v. Diamond Shamrock Corp.</u>, 670 F.2d 66 (6th Cir. 1982). In the case at bar, Plaintiff makes no claim based on direct evidence, but rather argues the facts raise an inference of discrimination through circumstantial evidence. <u>McDonnell Douglas</u>, 411 U.S. 792 (1973).

Two theories of liability under Title VII are at issue in this case, disparate treatment and hostile work environment. In order to establish a <u>prima facie</u> case of circumstantial evidence of disparate treatment, Plaintiff must show 1) he is a member of a protected class, 2) he was qualified for the job, 3) he suffered an adverse employment action, and 4) he was replaced or treated less favorably than a similarly-situated person outside the protected class. <u>Hoskins v. Oakland County Sheriff's Department</u>, 227 F.3d

719, 731 (6th Cir. 2000)(<u>citing</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)). In response, Defendant must proffer a legitimate non-discriminatory reason for its actions <u>Id</u>. If Defendant proffers such a reason, Plaintiff then has the burden to prove that the stated reason is pretextual. <u>Id</u>.

     As for Plaintiff's second theory, he can raise a genuine issue of material fact as to a hostile work environment if a reasonable jury, looking at the totality of the circumstances, could conclude Defendant subjected Plaintiff to harassment that created an offensive or hostile work environment, <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993), <u>Southerland v. Sycamore</u>, No. C-1-02-162, 2003 U.S. Dist. LEXIS 14260 (S.D. Ohio July 3, 2003). In this case, Defendant argues Plaintiff fails to establish a <u>prima facie</u> case under either theory, and in any event, Plaintiff's performance constitutes a legitimate nondiscriminatory reason for its termination of Plaintiff's employment.

**1. Plaintiff's Disparate Treatment Claim**

     Defendant argues that Plaintiff has failed to raise a genuine issue for trial with respect to his disparate treatment claim because, in its view, 1) Plaintiff cannot establish that he was performing his job satisfactorily, 2) Plaintiff has failed to present evidence that he was replaced by an individual outside his protected class or was treated less favorably than similarly-situated employees, and 3) Plaintiff offers no evidence of pretext

13

in response to Defendant's proffered legitimate non-discriminatory reason for his discharge.  Having reviewed Defendant's arguments, the Court does not find well-taken its position that Plaintiff has failed to raise a genuine issue for trial with respect to his disparate treatment claim.

> ### a.  The __Prima__ __Facie__ Case and Plaintiff's Performance

In response to Defendant's first argument, Plaintiff correctly responds that Defendant conflates the distinct stages of the McDonnell Douglas analysis, as for the prima facie case Plaintiff must only demonstrate that he was objectively qualified. (doc. 57, citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574-76 (6th Cir. 2003)(en banc); Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-661 (6th Cir. 1999)).  Plaintiff proffers evidence that he had over twenty-five years experience with airplanes, that the U.S. Air Force gave him an honorable discharge, that he spent fifteen years as an airplane engineering technician at Wright-Patterson Air Force Base, and that Defendant's initial performance evaluation rated Gaston as a "good and dependable employee," and rated his overall performance as "good" (doc. 57). The Court finds no question that Plaintiff was objectively qualified for his position at ABX, and therefore he meets the second prong of his prima facie case.  Hoskins v. Oakland County Sheriff's Department, 227 F.3d 719, 731 (6th Cir. 2000).

### b. Plaintiff's Burden to Show He Was Treated Differently

In response to Defendant's second argument, Plaintiff argues he can both demonstrate that he was replaced by and treated less favorably than employees outside the protected class (doc. 57). However, Defendant argues, citing <u>Reeher v. Baker Material Handling Corp.</u>, Nos. 92-3244, 93-3245, 92-3246, 92-3256, 1993 U.S. App. LEXIS 16142, at *9 (6th Cir. June 23, 1993), that Plaintiff failed to name a name or identify the race of any alleged replacement (doc. 61). Although Plaintiff offers testimony that no other African-American storekeepers were on second shift after his termination, and argues the Court could therefore reasonably infer that he was replaced by someone outside the protected class, Defendant argues Plaintiff cannot rely on such an inference to establish his <u>prima facie</u> case (<u>Id</u>.). The Court need not reach this question, however, because to meet the requirement of his <u>prima facie</u> case, Plaintiff need only to show that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998). As Plaintiff argues, he need only show that he and the comparator employees are similarly situated in all relevant respects. In this case, Plaintiff argues that during a three-year long chain of events he was constantly treated differently than other non-minority employees. He argues that from the start of his employment as a sorter, he noticed that

15

African-American sorters were left to struggle with overflowing loads of packages, while Caucasian sorters were given help. Although Defendant contests Plaintiff's allegation that he was subjected to different work requirements under Bogard than those imposed on other storekeepers, and contests that Plaintiff has failed to establish that all the other five storekeepers with performance concerns were outside the protected class, clearly Miesse found Bogard exhibited a lack of sensitivity to cultural and dialectical differences in relation to Plaintiff. While Defendant argues that all of these assorted facts do not amount to adverse employment actions in and of themselves, they certainly could lead a jury to conclude that during the course of his three-year employment, Plaintiff was treated differently than Caucasian workers. And though Defendant protests that this case is not a failure to promote case, a jury might find the fact that Scott promoted Bontempo, a Caucasian, rather than Gaston to be further evidence of disparate treatment, if it concluded such action in passing over Gaston was made based on a personnel file full of illegitimate performance concerns. Finally, even without any of the above evidence, the Court concludes a jury could find Defendant treated Plaintiff differently as to his ultimate termination, compared to storekeepers Steve Fender and Gary Johnson. The Sixth Circuit has found that where employees are subject to the same standards, and where the same conduct is in question, such factors

16

can lead to the determination that employees are similarly situated. <u>Johnson v. The Kroger Company</u>, 319 F.3d 858, 867 (6th Cir. 2003). Here Plaintiff has raised a genuine issue of material fact as to whether he was treated differently than Fender and Johnson for similar hazardous material shipping violations. Although Defendant argues that Fender and Johnson's violations occurred prior to those of Plaintiff's, and resulted in new procedures to which Plaintiff did not comply, it is unclear how long the new procedures were in place and whether Defendant adequately trained Plaintiff in such new procedures. Moreover, the fact of the matter is, ABX was not fined for any of Plaintiff's hazardous material shipping violations, and the procedures in place caught the error. In contrast, Fender and Johnson's errors resulted in fines being levied against ABX. Under these circumstances, a jury might indeed find that Plaintiff was treated differently than Fender and Johnson, who unlike him, did not lose their jobs. Defendant attempts further to distinguish the records of Fender and Johnson from that of Plaintiff, arguing that neither Fender or Johnson had the disciplinary record and performance concerns of Plaintiff. Yet if a jury would accept Plaintiff's argument that his disciplinary and performance records were skewed by unfair treatment from the very beginning of his employment, then any such distinction vanishes. Taking all inferences in favor of the non-movant, as the Court is required to do in the context of

17

this summary judgment motion, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, at 587 (1986), the Court concludes that Plaintiff has raised a genuine issue of material fact as to whether he was treated differently than Fender and Johnson.  Therefore, Plaintiff has met the evidentiary burden of his <u>prima facie</u> case to show disparate treatment for similar conduct.

### c.  Pretext

Once a <u>prima facie</u> case has been established, the defendant must articulate a legitimate, non-discriminatory reason for the employment decision.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).  Once the defendant has met this burden, the plaintiff must be afforded an opportunity "'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000) (quoting <u>Burdine</u>, 450 U.S. at 253).  The plaintiff may demonstrate the pretextual nature of the offered reason for the employment decision by establishing (1) that the proffered reason had no basis in fact, or (2) the proffered reasons did not actually motivate the discharge, or (3) the proffered reasons were insufficient to motivate discharge.  <u>Manzer v. Diamond Shamrock Chem Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).

Here Defendant attacks Plaintiff's disparate treatment claim, arguing that in its view, Plaintiff has failed to establish

a genuine issue of material fact as to the pretextual nature of its articulated reason for terminating him (doc. 61).  Plaintiff has the burden to show by a preponderance of the evidence that Defendant's explanation for his termination, performance problems, is merely a pretext for his termination.  The Court finds that Plaintiff has indeed raised a genuine issue of material fact as to pretext, such that a reasonable jury might find that Defendant terminated him because of his race.  A jury could find that Defendant's proffered reason lacks credibility because Plaintiff has offered sufficient evidence such that a reasonable fact-finder could conclude his performance was fine, that his record was skewed by unfair treatment, and that the alleged errors he committed were insufficient to justify his termination.  This final point is the strongest, as Plaintiff has shown that other Caucasian employees were not terminated for similar conduct, thus the proffered reason concerning hazardous shipping errors could be seen as insufficient to motivate the discharge.  <u>Manzer</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).  Of course after evaluating the witnesses and Plaintiff's credibility, a jury could choose to accept Defendant's reason, but the Court concludes Plaintiff has proffered adequate evidence such that the jury could find in his favor.

**2.  Plaintiff's Hostile Work Environment Claim**

Title VII's broad prohibition against discrimination in the workplace reaches claims of hostile or abusive work

19

environments.  See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986).  To be actionable under Title VII, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult. . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  Under this standard, the conduct at issue must be both objectively hostile or abusive to a reasonable person and must be subjectively hostile or abusive to the victim.  Id.  The conduct and workplace at issue need not result in serious injury or psychological damage to the victim to fall within Title VII's purview, however.  Id.  Concrete harm is not required – all that is required is that "the environment would reasonably be perceived, and is perceived, as hostile or abusive."  Id at 22.  Whether conduct or a workplace is hostile or abusive under the meaning of Title VII can only be determined by looking at the totality of the circumstances.  While factors such as frequency and severity will play important parts in the determination, no one factor is dispositive.  Id at 23.

ABX Air moved for summary judgment on Plaintiff's hostile work environment claim on the grounds that the conduct Gaston alleged, even if true, was not severe or pervasive enough to establish a finding of a hostile work environment, nor did it occur because of his race (doc. 61).  Defendant, citing Blount v. D.

<u>Canale Beverages, Inc.</u>, No. 02-2813 V, 2003 U.S. Dist. LEXIS 25162 at *50 (W.D. Tenn. November 12, 2003), further argues that "[a]lleging harassment in conclusory terms with no names, no times, or occasions to support the allegations does not satisfy the plaintiff's prima facie burden of establishing that he was harassed on the basis of his race" (<u>Id</u>.).

In <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647 (6th Cir. 1999), the appeals court advised against taking a narrow view of workplace harassment, carving the work environment into a series of discrete incidents and measuring the harm of each episode, or requiring a specific intent to specifically harass the Plaintiff. <u>Id</u>. at 659-60. Citing <u>Williams v. General Motors</u>, 187 F.3d 553 (6th Cir. 1999), the Sixth Circuit indicated the proper analysis includes a look at the cumulative effect of various incidents, consistent with the totality of the circumstances approach. <u>Id</u>. The conduct need not be overtly racial in order to be construed as harassment based on [race]." <u>Williams</u>, 187 F.3d at 565.

Here, contrary to Defendant's assertion, Plaintiff recounts three years of treatment he perceived as stemming from "racial tension," and he names his supervisors as allowing African American employees to struggle with overwhelming tasks, as nit-picking him and disciplining him inconsistently with others, and as enforcing procedures against him that were not enforced against Caucasian employees. These actions could be seen to alter the

21

conditions of Gaston's employment and create an abusive working environment. Although Defendant raises in its defense that Miesse investigated Plaintiff's concerns about Bogard, and ultimately counseled Bogard to change his behavior toward Plaintiff, the Court is wary of "crediting the few remedial actions" Defendant took, when the totality of the facts could lead a jury to conclude Plaintiff was objectively the victim of a racially hostile environment. Jackson, 191 F.3d at 659 (6th Cir. 1999). As noted above, when reviewing a motion for summary judgment, this Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita, 475 U.S. at 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994). Plaintiff has raised enough of a question that he was treated differently, due to racial tension, and it is up to a jury to decide whether to believe Mr. Gaston's allegations or the testimony of ABX's witnesses, as the Court cannot weigh the credibility of witnesses. Furthermore, whether Defendant's actions rose to the level of actionable harassment under Title VII is also a question of fact for a jury to determine in light of the totality of the circumstances.

22

3. **Plaintiff's Public Policy Claim**

The Court finds Plaintiff's Ohio public policy claim controlled by the holding in <u>Carrasco v. NOAMTC, Inc.</u>, in which the Sixth Circuit found that Title VII and Ohio Rev. Code § 4112 provide adequate remedies to vindicate Ohio's public policies against unlawful employment discrimination, and therefore such claims are precluded under Ohio law. 124 Fed. Appx. 297, 304 (6th Cir. 2004) (interpreting the Ohio Supreme Court's ruling in <u>Wiles v. Medina Auto Parts</u>, 96 Ohio St. 3d 240, 773 N.E.2d 526, 530 (2002)(citations omitted) to bar public policy claims where there exists a statutory remedy that adequately protects society's interests), <u>see also</u> <u>James v. ABX Air, Inc.</u>, 2006 U.S. Dist. LEXIS 16979, No. 1:03-CV-00480, at *10, (S.D. Ohio, March 23, 2006)(Spiegel, J.), <u>Stang v. Deloitte & Touche</u>, Case No. 2:05-CV-590, 2006 U.S. Dist. LEXIS 16444, * 9 (S.D. Ohio, April 5, 2006). Accordingly, the Court finds it appropriate to grant Defendant summary judgment on Plaintiff's Ohio public policy claim.

4. **Plaintiff's Claims Against Donna Scott**

The Court finds well-taken Defendant's argument that Plaintiff's claims against Donna Scott are precluded under <u>Walthen v. General Electric Co.</u>, 115 F.3d 400, 405 (1997)(An individual employee cannot be held liable under Title VII). The Court therefore finds it appropriate to dismiss Plaintiffs' claims against Defendant Scott.

23

**5.  Defendant Claims Plaintiff Failed to Exhaust His Remedies**

Although Plaintiff timely filed a charge of race discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission, thus satisfying the requirements of 42 U.S.C. § 2000e-5, Defendant cites to <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), for the proposition that an employee seeking relief in federal court must first exhaust all administrative remedies (doc. 61).  Obviously this argument falls flat, as Plaintiff has complied with <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101.

Defendant then argues that where an employer has an internal process for appealing adverse decisions, such process must be used and failure to do so is grounds for dismissal (<u>Id</u>.). Clearly Plaintiff raised his complaints throughout the tenure of his employment, and Defendant did not dismiss him for failing to do so, but rather for alleged performance problems.  Defendant relies upon <u>Nemazee v. Mt. Sinai Medical Center</u>, 564 N.E.2d 477, 482 (1990), but such reliance is misplaced.  <u>Nemazee</u> did not involve Title VII claims, but rather state law deference to the procedures of private hospitals that are inapplicable in this case.  564 N.E.2d at 482.  In conclusion, the Court does not find well-taken Defendant's argument that Plaintiff's failure to comply with the adhesive terms of its employee handbook, preclude his right to pursue his discrimination claims in this Court.

24

**IV.    CONCLUSION**

For the reasons indicated herein, the Court finds genuine issues of material fact preclude judgment for Defendant on Plaintiff's federal and state law discrimination claims.  However, the Court finds well-taken Defendant's arguments that Plaintiff's claims based on Ohio public policy, and against individual Defendant Donna Scott fail as a matter of law.  The Court rejects Defendant's argument that Plaintiff is barred from asserting his claims that were otherwise properly exhausted in conformity with 42 U.S.C. § 2000e-5.

Accordingly, the Court DENIES in part Defendants' Amended Motion for Summary Judgment (doc. 53) as to Plaintiff's Title VII claims, Plaintiff's claims pursuant to 42 U.S.C. § 1981, and state law discrimination claims under Ohio Rev. Code § 4112, but GRANTS in part Defendants' Motion (doc. 53) as to Plaintiff's Ohio public policy claims, and as to Plaintiff's claims against individual Defendant Donna Scott.  The Court therefore DISMISSES Donna Scott as a Defendant in this case.  Finally, the Court SETS this matter for final pretrial conference at 2:00 P.M. on April 26, 2007, and SCHEDULES the three-day jury trial to commence on May 15, 2007.

SO ORDERED.

Dated: March 20, 2007          /s/ S. Arthur Spiegel
                                _____

                                S. Arthur Spiegel
                                United States Senior District Judge